| | |
|---|---|
| DISTRICT COURT<br>ARAPAHOE COUNTY, COLORADO<br><br>Arapahoe County Justice Center<br>7325 South Potomac Street<br>Englewood, CO 80112 | |
| **Plaintiff:**<br><br>CHRISTOPHER L. WARRINGTON<br><br>v.<br><br>**Defendant:**<br><br>FIRST DATA CORPORATION | **COURT USE ONLY** ▲<br><br>Case No.<br><br>2010 cv 229<br><br>Division<br><br>201 |
| William J. Martinez<br>McNamara, Roseman, Martinez & Kazmierski LLP<br>1640 East 18th Avenue<br>Denver, CO 80218<br>Tel: 303/333-8700<br>Fax: 303/331-6967<br>E-mail: wjm@18thavelaw.com<br>Attorney Registration No. 16734<br><br>*ATTORNEY FOR PLAINTIFF* | |
| **SUMMONS** | |

**THE PEOPLE OF THE STATE OF COLORADO,**
**TO THE ABOVE-NAMED DEFENDANT:**

You are hereby summoned and required to file with the Clerk of this Court an answer or other response to the attached Complaint and Jury Demand. If service of the Summons and Complaint and Jury Demand was made upon you within the State of Colorado, you are required to file your answer or other response within 20 days after such service upon you. If service of the Summons and Complaint and Jury Demand was made upon you outside the State of Colorado, you are required to file your answer or other response within 30 days after such service upon you.

EX. A

If you fail to file your answer or other response to the Complaint & Jury Demand in writing within the applicable time period, judgment by default may be entered against you by the Court and orders may be issued for the relief demanded in the Complaint without further notice.

The following documents are served herewith: **Complaint & Jury Demand, and Civil Cover Sheet.**

Dated this 22nd day of January, 2010.

McNAMARA, ROSEMAN,
MARTÍNEZ & KAZMIERSKI LLP

*s/ William J. Martínez*
1640 East 18th Avenue
Denver, CO 80218
Tel: 303/333-8700
Fax: 303/331-6967
E-mail: wjm@18thavelaw.com
Attorney Registration No. 16734

ATTORNEY FOR PLAINTIFF

This Summons is issued pursuant to Rule 4, C.R.C.P, as amended. A copy of the Complaint must be served with this Summons.

| | |
|---|---|
| DISTRICT COURT<br>ARAPAHOE COUNTY, COLORADO<br><br>Arapahoe County Justice Center<br>7325 South Potomac Street<br>Englewood, CO 80112 | |
| **Plaintiff:**<br><br>CHRISTOPHER L. WARRINGTON<br><br>v.<br><br>**Defendant:**<br><br>FIRST DATA CORPORATION | **COURT USE ONLY** ▲<br><br>Case No.<br>2010cv229<br>Division<br>201 |
| William J. Martinez<br>McNamara, Roseman, Martinez & Kazmierski LLP<br>1640 East 18th Avenue<br>Denver, CO 80218<br>Tel: 303/333-8700<br>Fax: 303/331-6967<br>E-mail: wjm@18thavelaw.com<br>Attorney Registration No. 16734<br><br>*ATTORNEY FOR PLAINTIFF* | |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiff Christopher L. Warrington ("Plaintiff" or "Warrington"), by his attorneys the law firm of McNamara, Roseman, Martinez & Kazmierski LLP, complains against Defendant First Data Corporation ("Defendant" or "First Data") as follows:

## PARTIES

1. Plaintiff is a legal resident of the United States and is currently a resident of the State of Florida.

2. Defendant is a foreign corporation incorporated in the State of Delaware.

3.     Defendant's principal place of business in the State of Colorado is located at 6200 South Quebec Street, Greenwood Village, CO 80111.

## VENUE

4.     Venue is proper in Arapahoe County, Colorado pursuant to C.R.C.P. 98(c)(1) and (4).

## GENERAL ALLEGATIONS

5.     Warrington was hired by Defendant with the acquisition of Peace Software in August 2006.

6.     In March 2007 Plaintiff was promoted into the position of President & CEO of First Data Utilities, a wholly-owned subsidiary of Defendant.

7.     During the period he was employed with Defendant, Plaintiff was a highly-regarded member of First Data management team. At all times Plaintiff discharged his duties and responsibilities as President of First Data Utilities in a superior manner.

8.     In early 2008 Defendant began the process of divesting its ownership interest in Peace Software. At that time, Defendant's top management placed a very high value on the key role Plaintiff could play in maximizing the First Data's return on its investment in Peace Software. The irreplaceable role Plaintiff could play in Defendant's sale of Peace Software was a direct result of Warrington's prior position as an Executive Vice President at Peace Software.

9.     Also in early 2008, Plaintiff informed Matthew Lewis, then President of First Data Innovative Payments Group ("Lewis"), that he was in the process of exploring new employment opportunities. Plaintiff also informed Lewis at this time that it was his intent to leave First Data unless Defendant provided him with the additional financial incentive he needed to remain in his current position with the company.

10.     In response, on or about 1 February 2008 Lewis offered Plaintiff the opportunity to enter into a Special Payment Agreement (the "Agreement"). In this Agreement, Lewis specifically acknowledged to Plaintiff that his "assistance on accomplishing the sale of Peace Software will be critical."

11.     Warrington and First Data executed the Agreement on or about 8 April 2008. In relevant part, the Agreement provided for the following:

(a)     Payment to Warrington in the amount of $750,000 in the event of the actual or "substantially completed" sale of Peace Software occurred on or before 31 May 2008; and

(b) In the event Peace Software was not sold, or the sale had not been substantially completed, by 31 May 2008, Defendant was to pay Plaintiff $200,000 by the end of July 2008. The parties agreed this payment would be an expedited payment against a $200,000 retention bonus provided for in Warrington's original employment contract entered into by the parties in August 2006.

12. Under the terms of the Agreement, Plaintiff was to receive either the $750,000 special payment or the $200,000 retention bonus. While he could not receive both payments, unless he was discharged (an event which never occurred), Warrington knew he would receive one of these two payments.

13. Sometime in May 2008 it became apparent to Plaintiff, as well as to those First Data managers who were involved in the efforts to sell Peace Software, that such sale was not going to be completed, or even substantially completed, prior to the end of May 2008. The delay in the sale of Peace Software was not in any manner caused by any act or omission on the part of Warrington.

14. During the January - April 2008 time frame, Plaintiff also had several discussions with Defendant's management regarding the issue of whether he would agree to remain an employee of First Data after 31 May 2008. Plaintiff made it very clear in these discussions that the compensation arrangements under his original At-Will Employment Agreement with Defendant were insufficient to keep him at First Data beyond May 2008. This was primarily because Warrington had other, more lucrative employment opportunities then available to him.

15. First Data management, in word and deed, clearly communicated and demonstrated its intent to have Plaintiff remain with the company until the Peace Software sale could be concluded, and for the terms of the Agreement to remain in effect after 31 May 2008.

16. Plaintiff understood Defendant's intent to be that the terms of the Agreement were to remain in effect until the sale of Peace Software was closed, even though said closing would clearly not occur until after 31 May 2008. Plaintiff demonstrated his acceptance of this amendment of the Agreement by continuing to work for Plaintiff after the end of May 2008.

17. No written addendum to the Agreement evidencing its amendment was signed by Plaintiff and Defendant. Nonetheless, the course of conduct by the parties to the Agreement subsequent to the end of May 2008 is clear evidence of their mutual intent to orally modify the Agreement in the manner set forth above.

18. A non-exhaustive set of examples of such course of conduct subsequent to 31 May 2008 include at least the following:

(a) In June 2008 Stan Wilson, then the Vice President of Corporate Strategy for First Data, orally told Plaintiff that payment of the $750,000 incentive bonus was still in play as long as Warrington "played straight" in the ongoing negotiations over the sale of Peace Software;

(b) Defendant failed to pay Plaintiff the $200,000 retention bonus on an expedited basis by the end of July 2008. As a consequence, it was reasonable for Plaintiff to infer that, since his employment with Defendant had not been terminated, he remained eligible to be paid the $750,000 special payment; and

(c) In September 2008 First Data management prepared a written summary of the relative costs of continuing its efforts to sell Peace Software, as compared the costs of shutting down that entity. In this document, the payment due to Warrington under the Agreement was clearly included as one of the costs of the Peace Software sale scenario.

19. There was a clear meeting of the minds between Plaintiff and Defendant to amend the Agreement such that its terms would remain in effect until the sale of Peace Software was closed, even though said closing would not occur until after the end of May 2008.

20. Based on this mutual understanding, Warrington remained in his position and continued to work for First Data Utilities until the sale of Peace Software was closed on or about 21 October 2008.

21. On or about 15 October 2008 Defendant deposited $200,000 into Plaintiff's bank account. As a result, Defendant continues to remain liable to Plaintiff under the Agreement, as amended.

## FIRST CLAIM FOR RELIEF
(Breach of Express Contract)

22. Plaintiff incorporates the allegations set forth in paragraphs 1 through 21 of this complaint as if fully alleged herein.

23. The Agreement was orally amended by the agreement and consent of both Plaintiff and Defendant (the "Amended Agreement").

24. Plaintiff substantially performed all of the services the Amended Agreement required of him by continuing to work for Defendant subsequent to 31 May 2008.

25. Plaintiff's substantial performance of the Amended Agreement provided valuable services to Defendant, which services proved essential to the sale of Peace Software at the price obtained for it by First Data.

26. In these circumstances the Amended Agreement required Defendant to make a special payment to Plaintiff in the amount of $750,000 within 60 days of the sale by First Data of the Peace Software entity.

27. The sale of Peace Software closed on or about 21 October 2008. Since that date Defendant has failed to pay Plaintiff the full special payment required of it under the terms of the Amended Agreement.

28. Defendant has materially and substantially breached the Amended Agreement by failing to pay Plaintiff the full special payment.

29. As a direct and proximate result of Defendant's material and substantial breach of the Amended Agreement, Plaintiff has suffered substantial economic and consequential damages.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

## SECOND CLAIM FOR RELIEF
(Breach of Contract Implied in Fact)

30. Plaintiff incorporates the allegations set forth in paragraphs 1 through 29 of this complaint as if fully alleged herein.

31. Plaintiff continued to work for Defendant subsequent to 31 May 2008. In doing so, Plaintiff provided valuable services to Defendant, which services proved essential to the sale of Peace Software at the price obtained for it by First Data.

32. Plaintiff provided the referenced valuable services to First Data after 31 May 2008 with the reasonable expectation that he would be paid the reasonable value of these services by Defendant.

33. Defendant requested and accepted the services performed by Plaintiff on its behalf, expecting to pay Plaintiff the reasonable value of these services.

34. Alternatively, Defendant requested and accepted the services performed by Plaintiff on its behalf under such circumstances that it knew, or reasonably should have known, that Plaintiff expected to be paid the reasonable value of these services.

35. The $750,000 special payment set forth in the Agreement is evidence of the reasonable value of the services Plaintiff provided to Defendant since in or about February 2008.

36. Defendant has failed to pay Plaintiff the reasonable value of the services Warrington provided to First Data since in or about February 2008.

37. Defendant has materially and substantially breached the contract implied between Plaintiff and Defendant by the relevant facts set forth above.

38. As a direct and proximate result of Defendant's material and substantial breach of the contract implied by the relevant facts set forth above, Plaintiff has suffered substantial economic and consequential damages.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

### THIRD CLAIM FOR RELIEF
(Breach of Contract Implied in Law - Unjust Enrichment)

39. Plaintiff incorporates the allegations set forth in paragraphs 1 through 38 of this complaint as if fully alleged herein.

40. Plaintiff's substantial performance of the Amended Agreement as described above conferred a valuable benefit on the Defendant.

41. Defendant both appreciated and realized the valuable benefit conferred upon it by Plaintiff's substantial performance of the Amended Agreement.

42. Defendant appreciated and realized the valuable benefit conferred upon it by Plaintiff's substantial performance of the Amended Agreement under such circumstances that it would be inequitable for Defendant to retain said benefit without paying to Plaintiff the reasonable value of that benefit.

43. Defendant has materially and substantially breached the contract implied between Plaintiff and Defendant by the law of equity applicable to the relevant facts set forth above.

44. As a direct and proximate result of Defendant's material and substantial breach of the contract implied by the relevant facts set forth above, Plaintiff has suffered substantial economic and consequential damages.

WHEREFORE, Plaintiff prays for relief as more fully set forth below.

### PRAYER FOR RELIEF

Plaintiff respectfully requests this Court to enter judgment in his favor and against Defendant, and that it order the following relief against Defendant:

A. Economic and consequential damages for all claims as allowed by law, in an amount to be determined at trial;

B.  Prejudgment and post-judgment interest at the statutory rate; and

C.  Such further relief as this Court deems just and proper.

### JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues of fact raised by his Complaint.

DATED this 22nd day of January, 2010.

        McNamara, Roseman,
        Martínez & Kazmierski LLP

        By: *s/ William J. Martínez*
        1640 East 18th Avenue
        Denver, CO 80218
        Tel: 303/333-8700
        Fax: 303/331-6967
        E-mail: wjm@18thavelaw.com
        Attorney Registration No. 16734

        ATTORNEY FOR PLAINTIFF

Address of Plaintiff:

Christopher L. Warrington
3834 Kent Court
Miami, FL 33133

In accordance with Colo. R. Civ. P. 121 § 1-26(9), a printed copy of this document with original signatures is being maintained by the filing party and will be made available for inspection by other parties or the Court upon request.

7